UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 93-1604

NATIONAL LABOR RELATIONS BOARD,

Petitioner,

v.

CRAFTS PRECISION INDUSTRIES, INC.,

Respondent.

ON PETITION FOR ENFORCEMENT OF AN ORDER
OF THE NATIONAL LABOR RELATIONS BOARD

Before

Torruella, Circuit Judge,

Aldrich, Senior Circuit Judge,

and Stahl Circuit Judge.

Harold N. Mack with whom Benjamin Smith and Morgan, Brown & Joy

were on brief for Respondent.
Jill A. Griffin with whom Howard E. Perlstein, Supervisory

Attorney, Jerry M. Hunter, General Counsel, Yvonne T. Dixon, Acting

Deputy General Counsel, Nicholas E. Karatinos, Acting Associate

General Counsel, Aileen A. Armstrong, Deputy Associate General

Counsel, and National Labor Relations Board were on brief for

Petitioner.

February 15, 1994

ALDRICH, Senior Circuit Judge. This is an action

by the National Labor Relations Board to enforce an order

against Crafts Precision Industries, Inc., a manufacturer,

hereinafter Crafts, or Respondent. Originally there were two

complaints. Simplifying complaint number 26,573, filed

October 27, 1989, it alleges, in substance, that in July

1989, Crafts refused to bargain by partially transferring its

polycrystalline department from Massachusetts to its Illinois

facility. This transfer, hereinafter the PDT, allegedly was

an unfair labor practice designed to discourage lawful

employee activities. The complaint sought its return.

Acting General Counsel, (Counsel), concedes that, although

there was some other language in the complaint, the propriety

of this transfer was the sole issue, in accordance with the

charge.

On February 14, 1990 counsel for the Union signed

and filed a new charge, numbered 27,070, reading in its

entirety,

The above-named Employer has
discriminated against employees because
of their participation in protected
activities.[1]

Thereafter, on April 23, 1990 the Union filed a further

charge, given the same number, stating,

1. On the issue of notice, as well as satisfying section
10(b)'s six months limitation, the Board's brief describes
this as "plain language." It may be plain, but it is hardly
explicit.

-2-

On or about August 22, 1989, the
above-named Employer, by its officers and
agents, laid off John Kierstead, Tom
McCullough, William Hillson, Kien
Nguyen, Son Le, Terrance Crowley, Minh Ha
and Thinh Pham because of their union
activities.

On April 30, 1990 complaint No. 27,070, was filed,

stating,

7. On or about August 22, 1989,
Respondent laid off the following
employees:

John Kierstead Terrance Crowley
Tom McCullough Son Le
William Hillson Minh Ha
Kien Nguyen Thinh Pham

8. The layoffs of the employees
referred to above in paragraph 7
resulted, in whole or in part, from
Respondent's partial transfer of its
polycrystalline department from its
Canton facility to its Illinois facility
in July, 1989.

9. Respondent engaged in the
conduct described above in paragraph 7
because the employees named therein and
other employees joined, supported, or
assisted the Union, and engaged in
concerted activities for the purpose of
collective bargaining or other mutual aid
or protection, and in order to discourage
employees from engaging in such
activities or other concerted activities
for the purpose of collective bargaining
or other mutual aid or protection.

We must, however, back up. Case No. 26,573 was

called for trial on March 19, 1990. At the outset Counsel

moved orally to consolidate it with Case No. 27,070.

Respondent asserted that "under Collier" there should first

-3-

be arbitration. Counsel's response was that there need be

none because the two cases were related.2 The ALJ allowed

the motion, saying he would "hear further argument at the end

of this case." He then proceeded to hear the 26,573 case,

only.

We find, however, that by letter of February 16,

1990, Crafts learned that three of the eight employees later

named in the April enlargement were, allegedly, discharged

for individual reasons as well as because of the non-

negotiated PDT. When this second "consolidated" case was

later tried, Counsel, though satisfying the ALJ of the

wrongfulness of this transfer, did not show it cost any of

the named employees' jobs. Instead the offered proof was

simply that three of the group were wrongfully discharged on

account of individual lawful, but displeasing conduct.

On this basis Crafts complains that the charge that

prevailed was not made within Section 10(b)'s six months from

August 22, 1989, and that this was a jurisdictional defect.

Even if the February 14, 1990 charge were construed as

insufficient, Crafts must fail. The six months provision is

not jurisdictional, but is an ordinary statute of

limitations, see NLRB v. Silver Bakery, Inc. 351 F.2d 37, 39

(1st Cir. 1965), and, as such, may be waived. C.E.K. Indus.

2. It is now the Board's position that the cases were not
related.

-4-

Mechanical Contractors, Inc. v. NLRB, 921 F.2d 350, 351 n.2

(1st Cir. 1990). Immediately prior to the hearing on the

27,070 complaint Crafts knew of the separate claims of the

three individuals. It did not seek to amend its pleadings or

make any attempt to object on the ground of lateness. The

Board first heard of Crafts' Section 10(b) objection by way

of an objection taken to its opinion. Even were the point

valid, it was too late.

We turn to the case before us. The Board has

affirmed the ALJ's finding that five of the eight employees

named in the second complaint were discharged not because of

the machinery transfer, but, rather, solely for economic

reasons and thus not as a result of the PDT, found to be an

unfair labor practice by the ALJ. However, it reversed his

finding that the PDT was an unfair labor practice, finding,

instead, that it, too, was economically justified.

Correspondingly, it found that Crafts' allegedly improper

statement that it would make the transfer unless the union

agreed to a modification in the contract was not a threat,

but a fair announcement. Accordingly, all that is before us

is the Board's affirmance of the ALJ's finding against Crafts

with respect to laying off three individuals, Kierstead,

McCullough and Hillson.

-5-

The ALJ and the Board found that economic

considerations justified discharges,3 but that unfair

reasons predominated in the case of these three. It is

common ground that this is a "mixed motive" case, to be

governed by the shifting-burden analysis in Wright Line, 251

N.L.R.B. 1083 (1980), enf'd, 662 F.2d 899 (1st Cir. 1981),

cert. denied, 455 U.S. 989 (1982). Under N.L.R.B. v.

Transportation Management Corp., 462 U.S. 393 (1983), the

Supreme Court upheld the Wright Line analysis, stating it as

follows:

the General Counsel carrie[s] the burden
of persuading the Board that an antiunion
animus contributed to the employer's
decision to discharge an employee, a
burden that does not shift, but . . . the
employer, even if it fail[s] to meet or
neutralize the General Counsel's showing,
[can] avoid the finding that it violated
the statute by demonstrating by a
preponderance of the evidence that the
worker would have been fired even if he
had not been involved with the union.

Id. at 395. See also Herrick & Smith v. N.L.R.B., 802 F.2d

565, 570 (1st Cir. 1986) (employee's protected conduct must

be a "substantial or motivating factor for the discharge").

In reviewing the Board's findings, the court will

not "displace the Board's choice between two fairly

conflicting views, even though the court would justifiably

3. Crafts presented evidence that its sales had dropped
considerably; that it had laid off three other union
employees in July, and had reduced its non-union management
support staff by some 30%.

-6-

have made a different choice had the matter been before it de

novo." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488

(1951). However, "a reviewing court is not barred from

setting aside a Board decision when it cannot conscientiously

find that the evidence supporting the decision is

substantial, when viewed in the light that the record in its

entirety furnishes, including the body of evidence opposed to

the Board's view." Id.

Respondent argues, on the basis of this last quoted

clause, that on the affirmative finding of the economic

necessity of layoffs, with no finding that more layoffs were

made than necessary, the evidence was insufficient to support

the Board's findings, (1) that the three employees were laid

off because of their protected activity, and (2) that the

company had failed to show that the three would have been

laid off regardless of their union activity.

Hillson

In July 1989, Hillson complained to McCullough, the

chief union steward, that he had not received a pay raise

resulting from an earlier successful grievance. McCullough

pursued the matter with management twice in July and again

within a week before the August layoffs. There was nothing

else by way of a prima facie case. We may agree that timing

can be an important factor in determining whether a discharge

is motivated by the employee's protected activity. N.L.R.B.

-7-

v. Vemco, Inc., 989 F.2d 1468, 1479, amended, 997 F.2d 1149

(6th Cir. 1993). Here, however, we face an unusual

situation; the Board found that layoffs at that time were

justified. When a mass layoff is justified, it is not

unlikely that some affected employees will have recently

engaged in minor protected conduct. That, standing alone,

should not establish a prima facie case. Indeed, we suggest

that to hold so would be wrong in principle. Employees,

aware of the fact that reductions were imminent, could strive

to make minor trouble and thus place themselves in an

automatically protected group. We consider it speculative to

say the Board carried its burden. Rather, that it reacted

automatically here seems confirmed by its findings with

respect to Kierstead.

Kierstead

Like Hillson, Kierstead claimed that Respondent was

not complying with obligations that arose out of a previously

successful grievance. The Board found not only that

Kierstead was laid off just days after filing his labor grade

grievance, and just two weeks after being reinstated by court

order, but also that the company had given Kierstead a false

reason for its failure to reinstate him at his previous labor

grade -- that the PCD operations in Massachusetts had been

fully terminated, a claim retracted by the company at the ALJ

hearing. If this made out a prima facie case, it is

-8-

rebutted. Four employees were laid off in Kierstead's

department, one of whom, Son Le, was in a higher labor grade

than Kierstead. The ALJ and the Board found that the other

three layoffs, including Le's, were economically justified.

As it is undisputed that seniority was honored in the

layoffs, Kierstead cannot argue that another employee should

have been chosen in his place; all were either more senior or

in considerably higher labor grades.4 Further, the fact

that Respondent reached beyond Kierstead's labor grade and

into Le's indicates that Kierstead was not singled out

unfairly; in Kierstead's division, as in the Natural Diamond

division, Respondent exhausted the lowest labor grade before

reaching into a higher grade.5 No claim was made, by Le or

Kierstead, that Le was laid off as a cover for Kierstead's

layoff, despite the presence of the union representative

throughout the hearing. See, e.g., N.L.R.B. v. Jack August

Enterprises, Inc., 583 F.2d 575, 578-79 (1st Cir. 1978).

Given the Board's unchallenged findings regarding the other

4. The bargaining agreement provided that in selecting
employees for layoff, "seniority shall be the deciding factor
among employees physically fit and competent through
knowledge, skill, and efficiency to perform the available
work." Agreement at 12(b); T. & E. A. at 347.

5. The bargaining agreement also provided that "In the case
of layoff, an employee displaced from his occupational
grouping may exercise his shop seniority and bump into any
job in the same or lower labor grade providing he is then
qualified to perform the work . . ." Agreement at 12(a);
T. & E. A. at 347.

-9-

layoffs in this department, Kierstead would have been laid

off regardless of his union activity.

McCullough

With respect to McCullough there was more to the

case, though on both sides. From Crafts' standpoint, it did

away with his position of inspector, and provided that each

worker should inspect his own work. Pappas, Crafts' chief

officer, testified that he had contemplated that this would

effect a substantial saving. As against this the Board noted

that this had been done, if at all, in his head, without

paper analysis. To this Pappas replied that it had worked

out to save some $20,000. It would be difficult to say that

this affair was more than a draw, and insufficient to justify

a conclusion either way. The operator of a small company

must normally do much in his head. There was, however, more.

For over ten years McCullough had been union steward,

responsible for pursuit of union members' grievances with

management. In December, 1988, he received a labor grade

increase, and was told by his supervisor that he would have

received the increase at least two years earlier had it not

been for his union activities. Pappas became angry with

McCullough in June 1989 when he refused to move the location

of a vote on a working foreman proposal. After the vote,

Pappas asked for the vote total, but McCullough refused to

tell him. Twice in July and once during the week before the

-10-

layoffs in August, McCullough pursued a pay rate dispute with

management on behalf of Hillson. On August 15, McCullough

discussed with his supervisor Kierstead's pay grade dispute,

and his supervisor told McCullough that his name had come up

in a management conversation "with some disfavor" and that he

should be on his best behavior. McCullough discussed the

same issue with Pappas on August 17, and filed a grievance on

Kierstead's behalf the next day.

The Board held that this was sufficient evidence of

"animus to McCullough's union activities by the Respondent up

to the time immediately preceding his layoff." Although, for

reasons already given, we could not accept all of its

reasoning, we cannot fault the Board in this instance.

Obviously a union steward will not be management's fair-

haired boy or he would quickly lose favor with the union.

Correspondingly, we would think occasionally heated

disputes -- depending, perhaps, on personalities -- must

occasionally occur.6 It would seem unreasonable that a union

steward could have an ace-in-the-hole safe conduct against

lay-off by the fact that his pursuing grievances was

sometimes irritating. However, there was more than that

here. One does not punish a steward for his union

representation. We find the Board was warranted in holding

6. We note with some surprise that the Board seemingly
charged against Pappas the fact that he fought a grievance
"vigorously."

-11-

it had a prima facie case. Nor can we say that Respondent's

showing that it would have done away with the inspector's

position in any event was compelling as matter of law. The

work required somebody's time.

The order as to McCullough is enforced; otherwise

denied. No costs.

-12-